**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JAMES BEAN, B82034,**

   **Petitioner,**

  **vs.**        **Case No.: <u>3:11-cv-00715-DRH-PMF</u>**

**DAVE REDNOUR, Warden,**

   **Respondent.**

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Court Judge:**

   Before the Court is Petitioner James Bean's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 59). In 1997 Petitioner was charged with two counts of first degree murder in the St. Clair County Circuit Court. In 2000 a jury convicted him on both counts and Petitioner is now incarcerated at Menard Correctional Center serving a life sentence. Following extensive state court proceedings and appeals, Petitioner filed his initial petition with this Court on August 18, 2011. (Doc. 1). On December 26, 2012 the petition was stayed pending Petitioner's exhaustion of state court remedies. (Doc. 31). On June 14, 2013 the stay was lifted (Doc. 44) and Respondent filed an answer to Petitioner's petition on September 13, 2013 (Doc. 49). On January 30, 2014 Petitioner was granted leave to file an amended petition (Doc. 58) and the amended petition was filed shortly thereafter (Doc. 59). Respondent filed an answer to Petitioner's amended petition on March 3, 2014 (Doc. 60) and Petitioner filed a reply to the answer on May 2, 2014 (Doc. 63).

1

In short, Petitioner asserts that his Due Process rights were violated at trial when the prosecutor improperly vouched for the credibility of witnesses during closing arguments (Claim 1), that he was provided with ineffective assistance of counsel at trial in violation of the Sixth Amendment (Claim 2) and that the "cumulative prejudice" of his defense attorney amounted to ineffective assistance of counsel (Claim 3). For the following reasons, Petitioner's Amended Petition (Doc. 59) is **DENIED** and the Court shall decline to issue a Certificate of Appealability.

## BACKGROUND

In 1997 Petitioner James Bean was charged with two counts of first degree murder for the deaths of Gerald Little and Christopher Price. (Doc. 30-1, p. 1). At trial, co-defendants Brian Hill, Gary James and Willie Springer testified against Petitioner. (Doc. 30-1, p. 2). In exchange for their testimony, the three co-defendants pleaded guilty to attempted armed robbery and each received fifteen year sentences. *Id.* At the conclusion of trial Petitioner was found guilty on both counts of first degree murder and he received a life sentence. (Doc. 30-1, p. 1).

Gerald Little and Christopher Price died on November 6, 1997. *Id.* On November 17, 1997 Petitioner was interviewed by the police and Petitioner gave a statement indicating his culpability in the deaths. (Doc. 30-1, p. 14). Following the interview and prior to trial, a dispute arose over whether the Petitioner properly waived his *Miranda* rights during the interview. (Doc. 30-1, p. 1). The Court held that Petitioner could not have knowingly waived his *Miranda* rights but that his

2

statements were not coerced. *Id.* It was later stipulated that the interview would be admissible for the purposes of impeachment only. *Id.*

Co-defendants Hill, James and Springer each testified at Petitioner's trial. (Doc. 30-1, p. 2). Hill testified that at about 5:00 P.M. on November 6, 1997 he and four other individuals (Gary James, Willie Springer, Delandus Best and Petitioner) were at Springer's house. (Doc. 49-8, p. 15).  James started discussing a "lick" or robbery and he suggested that they rob Gerald Little. (Doc. 49-8, p. 14). Hill testified that Little was known to sell drugs. (Doc. 49-8, p. 15). They devised a plan where Little was to be invited to James's house. *Id.* James and Springer would then meet with Little while Hill, Best and Petitioner waited in the back yard. *Id.* When signaled, the other three would come forward and rob Little. *Id.* Hill and Petitioner were also armed. (Doc. 49-8, p. 17). Hill carried an AK-47 type assault rifle. *Id.* Petitioner possessed two firearms; a 9 millimeter handgun and a .357 caliber handgun. *Id.* Furthermore, Best went to a local Venture store to purchase walkie talkies. (Doc. 49-8, p. 16). Hill later observed Petitioner and James loading batteries in the walkie talkies. *Id.* The five regrouped at James's house at approximately 6:30 P.M. (Doc. 49-8, p. 15).

The robbery did not go as smoothly as planned. Hill testified that Little arrived at James's house accompanied by Christopher Price. (Doc. 30-1, p. 2). Upon realizing that they were about to be robbed, Little and Price ran away. *Id.* Petitioner and Hill ran after Little and knocked Little to the ground. *Id.* Price fled

to his pickup truck and attempted to leave. *Id.* Before he could do so, Best pointed a gun at Price and ordered him to stop. *Id.*

Hill testified that Little attempted to move and Petitioner shot Little twice in the legs using the .357 caliber handgun. *Id.* Petitioner and Hill then moved Little to the back of Price's truck. *Id.* Petitioner entered the cab of the truck while Hill and Best got into the back of the truck with Little. *Id.* Petitioner then ordered Price to drive. *Id.*

Hill testified that Price drove away from James's house with the other four individuals. *Id.* While driving along Trendly Avenue Price swerved into oncoming traffic and his pickup truck struck another vehicle. (Doc. 30-1, p. 3)*.* As Price attempted to exit his vehicle he was shot four times by Petitioner. *Id.* Best then shot Little. Additionally, Hill inadvertently dropped his pager at the scene. *Id.*

James and Springer's testimony at trial largely corroborated Hill's accounting of the day's events. *Id.* James testified that Petitioner admitted shooting someone. However James also testified that Best said that he was responsible for the shooting the Petitioner admitted committing. *Id.* Springer testified that after the five individuals met at his house to devise the robbery, he went to a Grandpa's store with Petitioner and James to purchase "ski masks and dickies and gloves." (Doc. 49-9, p. 9). Petitioner purchased the items and the three returned to Springer's house. (Doc. 49-9, p. 10). The five then travelled to James's house in Alorton to orchestrate the robbery. (Doc. 49-9, p. 11). Springer testified that he and James were inside James's house when Little was first shot.

(Doc. 49-9, p. 12). Springer stated that upon hearing gunshots he looked out the window and noticed a pickup truck driving away. *Id.* Other individuals also testified for the prosecution. Detective Steve Johnson testified that Hill's pager was found near the bodies. (Doc. 30-1, p. 4). Susan Bolen with the Illinois State Police testified that Petitioner's fingerprints were found on a walkie talkie that was discovered in James's backyard. (Doc. 30-1, p. 5).

At trial Petitioner testified in his own defense. (Doc. 30-3, p. 3). Petitioner testified that he was not involved in the robbery of Little or Price. (Doc. 49-10, p. 14). Petitioner testified that on November 6, 1997 at approximately 2:00 PM he was waiting at a bus stop at 43rd and State Street in E. St. Louis. (Doc. 49-10, p. 13). James noticed Petitioner and stopped to offer him a ride. *Id.* Petitioner accepted and opened the car door. *Id.* As the door opened a walkie talkie fell out of the car. *Id.* As the walkie talkie hit the ground the battery cover separated off. *Id.* The Petitioner picked up the walkie talkie along with the battery cover and handed the pieces to James. *Id.* James then drove to Melissa Lott's house, who was Petitioner's girlfriend at that time. *Id.* Petitioner testified that they arrived at Lott's house in Washington Park and that he stayed at her house through the night. *Id.*

Petitioner's appeals and the writ presently at issue focus in large part on the prosecution's closing arguments. (Doc. 30-2, p. 67-93). The prosecutor made several statements which were later argued by petitioner to be improper. In one instance the prosecutor argued that Petitioner's testimony regarding Melissa Lott

and the walkie talkie was untruthful.[1] (Doc. 30-1, p. 27). The prosecution reiterated his doubts about the credibility of Petitioner's testimony throughout his closing arguments. The prosecution also made statements regarding Petitioner's interview with the police.[2] (Doc. 30-1, p. 31). Defense counsel objected to the prosecutor's statements and argued that the prosecution was using the evidence substantively and not just for impeachment purposes. *Id.* The judge sustained

---

[1] The prosecutor stated:

> Ladies and gentlemen, who is Melissa Lott? Did you see her get up on that stand and testify and say, I was with James Bean the whole day. No. Why? Because it's not the truth. It's not the truth. It's not the truth about the walkie-talkie. It's Mr. Bean coming up with a way to explain to you how did that print get there.
>
> Now, think about the prints. If you believe Mr. Bean that that's how the print got there and you believe that Gary James, Willie Springer and Brian Hill, I guess, conspired to make this up and to point the finger at him, you have to believe that I guess Gary James knew that the defendant left a print on there. He knew, if in fact that happened, when it fell, he left the print. And he knew that we can - - we are going to go do this later and we are going to have to bring Bean in here. We need a fall guy. You have to believe they all planned this and there is a fall guy we need. And James Bean is the poor fall guy that had nothing to do with this and we are just going to pick him out of the blue. (Doc. 30-1, p. 27).

The prosecutor later argued:

> We know that James Bean is part of this. He is part of this armed robbery. This is not, you know – this is not who done it. This is not a who done it case. This is a case of, how do I get out of it? There is a case of Mr. Bean getting up there and saying, how do I get out of this? How do I get out of this fingerprint? So I come up with a BS story about the fingerprint getting there and then throw in my girlfriend. (Doc. 30-1, p. 27).

[2] The prosecutor stated:

> Now, do you honestly believe as you sit here – and you saw Steve Johnson and Jack Kaffer who are in the courtroom now, you saw them on the stand. Steve Johnson, my height, little red headed but. Someone referred to him as the little red head. Do you really think that he is grabbing Mr. Bean by the shirt and getting in his face? And these police officers are going to get up there and risk their careers by saying, now Mr. Bean, please, would you please just sign this – sign this statement now and you can leave. Don't even look at it. We will cover the pages up on you. We will cover it up and now show you what is even there. Just sign it and then you can get out of here. Do those two guys look like they are, you know, bruisers that are going to do that kind of thing?
>
> And think about what they told you. If you think that they are – if you thought for a minute that they did that, don't you think in that statement they would have made things a little better? Don't you think if they are going to try to frame poor Mr. Bean, they are going to put in there things like – they are not going to use word, I accidentally shot the gun twice, you know. Make it more – yeah, I plugged him. I was planning to kill him the minute I – you know, after that robbery was over. That's not what happened. It just didn't happen that way. (Doc. 30-1, p. 31).

the objection. *Id.* Following closing arguments the jury deliberated and found Petitioner guilty on both counts. (Doc. 30-1, p. 1).

Petitioner appealed. *Id.* On appeal Petitioner argued that he was "denied a fair trial by the prosecutor's improper closing argument." (Doc. 30-1, p. 26). Specifically, Petitioner argued that "[t]he prosecutor repeatedly used improper argument to bolster his case by usurping the jury's function as fact-finder, by misrepresenting the evidence, by vouching for his witnesses, by reversing the burden of proof, and by using Mr. Bean's statement, which had been admitted for impeachment purposes only, as substantive evidence." *Id.* The Fifth District Court of Appeals rejected these arguments. (Doc. 30-1, p. 5). The state appellate court noted that some of the prosecutor's statements were "inartful" but the Petitioner "fail[ed] to prove that he was prejudiced by the comments made by the prosecutor." *Id.* The court also noted that "[t]he case against the defendant was exceptionally strong." (Doc. 30-1, p. 5). In an unpublished opinion the appellate court affirmed the verdict on October 17, 2002. (Doc. 30-1, p. 10).

On December 2, 2002 Petitioner filed a *pro se* petition for leave to appeal to the Illinois Supreme Court. (Doc. 30-1, p. 35). Petitioner's petition was essentially a verbatim copy of his appellate brief that was filed in the Fifth District Court of Appeals. *Id.* The Illinois Supreme Court denied the petition on February 5, 2003. *People v. Bean*, 202 Ill. 2d 675, 787 N.E.2d 174 (2003).

On August 8, 2003 Petitioner filed a *pro se* post-conviction petition in the St. Clair County Circuit Court pursuant to 725 ILCS 5/122-2, *et seq.* (Doc. 49-3,

p. 8). On September 28, 2004 Petitioner filed a "supplement" petition for post-conviction relief (Doc. 49-3, p. 46). Petitioner then filed another supplement petition for post-conviction relief on January 18, 2006 (Doc. 49-3, p. 55) and an "addendum to post-conviction petition" on July 17, 2007. (Doc. 49-3, p. 69). Petitioner was appointed counsel for his post-conviction petition and on July 23, 2008 his appointed attorney filed an amended petition for post-conviction relief. (Doc. 49-4, p. 1). The amended petition raised multiple claims:

I.  Ineffective assistance of trial counsel because counsel;

    a.  failed to call Alan Avant as a witness for the defense;

    b.  failed to review and present the security tape from Grandpa's store;

    c.  failed to adequately prepare herself for trial;

    d.  "permitted Petitioner to testify without advising him that the State would have the ability to impeach him with prior statements, which had been otherwise suppressed";

    e.  Failed to "attack Petitioner's improper arrest and to pursue motions to have him released"

    f.  failed to object to the felony murder instructions;

    g.  failed to present evidence of Petitioner's mental incapacity.

II.  Prosecutorial misconduct because "[t]he State failed to disclose Alan Avant's testimony when it knew, or should have known that such testimony was exculpatory in nature."

III. Improper Jury Instructions because "[t]he jury was instructed on "felony murder", when the entire prosecution had been premised upon "intent", thereby surprising Defendant and depriving him of an adequate opportunity to prepare defense."

IV. Ineffective assistance of appellate counsel because appellate counsel failed to raise the foregoing claims.

(Doc. 49-4, p. 1). The State filed a motion to dismiss the amended post-conviction petition and the motion to dismiss was granted in the St. Clair County Circuit Court on January 14, 2009. (Doc. 49-4, p. 7).

Petitioner through counsel appealed the dismissal of his amended post-conviction petition. (Doc. 30-1, p. 60). Petitioner argued that "[t]he trial court erred in dismissing James Bean's mended post-conviction petition prior to an evidentiary hearing where Mr. Bean's amended petition made a substantial showing that Mr. Bean's trial attorney was ineffective for failing to investigate and call a witness that would have corroborated Mr. Bean's defense." *Id.* The Fifth District Court of Appeals affirmed the dismissal of the Petitioner's post-conviction petition on October 12, 2010. (Doc. 30-2, p. 1). In dismissing Petitioner's post-conviction petition, the appellate court focused on Petitioner's ineffective assistance of counsel claim regarding Alan Avant.  (Doc. 30-2, p. 4). On June 25, 2003 Avant signed an affidavit stating that he went to Willie Springer's house on November 6, 1997 sometime between 6:00 P.M. and 6:30 P.M. to speak to Willie Springer's brother Rueben Springer. *Id.* When Avant arrived at the house he did

not see Petitioner, and in fact Avant stated that he never saw Petitioner on November 6, 1997. *Id.* However Avant observed Gary James, Brian Hill and Willie Springer sitting in Gary James' vehicle. *Id.* Avant briefly spoke to James and the three in the vehicle drove away from Springer's house. *Id.* The appellate court held that Avant's testimony was of little probative value, it did not contradict any other witnesses' testimony nor corroborate Petitioner's testimony and the failure to present him as a witness at trial did not amount to ineffective assistance of counsel. (Doc. 30-2, p. 5-6).

On November 30, 2010 Petitioner filed a petition for leave to appeal to the Illinois Supreme Court. (Doc. 30-2, p. 7). On January 26, 2011 the Illinois Supreme Court denied the petition for leave to appeal. *People v. Bean*, 239 Ill. 2d 558, 943 N.E.2d 1102 (2011). Petitioner also filed a petition for a writ of certiorari to the United States Supreme Court and it was denied on June 27, 2011. *Bean v. Illinois*, 131 S. Ct. 3075, 180 L. Ed. 2d 898 (2011).

While the Petitioner was actively pursuing his post-conviction petition, he also filed a "Petition to Vacate Void Judgment" in the St. Clair County Circuit Court. (Doc. 49-5, p. 3). Petitioner filed the petition on June 22, 2009 and argued that his criminal judgment was void because his indictment was missing various information; including a caption, a certificate of execution and identifying information of the court in which it was presented. (Doc. 49-5, p. 5-6). Petitioner also argued that the judgment was void because of other various defects. (Doc. 49-5, p. 3-18). The St. Clair County Circuit Court dismissed the petition on August

10

18, 2009. (Doc. 49-6, p. 1). Petitioner appealed the dismissal and on December 17, 2010 the Fifth District Court of Appeals dismissed the appeal because Petitioner failed to file an appellate brief. (Doc. 49-6, p. 1). Petitioner would later file a second petition for relief from judgment in the St. Clair County Circuit Court in March 2012. (Doc. 49-7, p. 2). Petitioner argued in the petition that trial counsel was ineffective for failure to challenge the legality of his arrest. (Doc. 49-7, p. 4). The court dismissed the petition on April 23, 2012. (Doc. 49-7, p. 19). Petitioner did not appeal the dismissal.

On October 28, 2010 Petitioner filed a motion for leave to file a successive post-conviction petition with the St. Clair County Circuit Court. (Doc. 30-2, p. 32). Petitioner's *pro se* proposed successive post-conviction petition is muddled, but he argues several claims:

I. Ineffective assistance of trial counsel for failing to:

    a. introduce surveillance videotape footage from the Grandpa's store;

    b. adequately investigate the case;

    c. failed to object to the prosecutor's attempt to amend the indictment;

    d. call Emanuel Garrett, Artimus Collier, Kyle Turner and Derrick Clay as witnesses.

II. Ineffective assistance of appellate counsel on direct appeal for not arguing that trial counsel failed to:

a. introduce the Grandpa's videotape footage;

b. call Collier, Turner and Clay as witnesses;

c. object to the prosecutor's attempt to amend the indictment.

III. The prosecution failed to disclose exculpatory evidence including the surveillance tape footage from the Grandpa's store;

IV. The prosecution knowingly introduced perjured testimony regarding Petitioner's arrest;

V. Petitioner's rights under the Confrontation Clause were violated;

VI. The prosecutor's closing argument was improper.

On November 1, 2010 the St. Clair County Circuit Court denied Petitioner's motion for leave to file a successive post-conviction petition, noting that "[Petitioner] fails to demonstrate cause for his failure to bring the claim in his initial post-conviction proceeding and that prejudice resulted." (Doc. 30-2, p. 74).

Petitioner appealed the decision and he was appointed counsel for the appeal. (Doc. 30-2, p. 76). After reviewing the case file, Petitioner's appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (Doc. 30-2, p. 79). In the *Finley* motion appointed counsel argued that the claims raised by Petitioner in his proposed successive post-conviction petition (specifically issues regarding the Grandpa's store tape) were previously raised in prior proceedings. (Doc. 30-2, p. 89). The only claim not raised in his Petitioner's prior proceedings was Petitioner's claim that Emanuel Garrett should have been called in his defense at trial. (Doc. 30-2, p. 93). Petitioner presented an

affidavit from Garrett stating that on November 6, 1997 Garrett was with Petitioner at Lott's house from about 5:00 P.M. to 8:00 P.M. (Doc. 30-2, p. 57). However in the *Finley* motion appellate counsel noted that Garrett's affidavit contradicted Petitioner's prior testimony. (Doc. 30-2, p. 93). Moreover, Petitioner had failed to demonstrate that Garrett was unavailable for trial or that he could not have discovered Garrett's possible testimony sooner through diligence. (Doc. 30-2, p. 94).

The Fifth District Court of Appeals granted the *Finley* motion and affirmed the St. Clair County Circuit Court's judgment. (Doc. 30-3, p. 1). The appellate court held that Petitioner's claims regarding the Grandpa's store surveillance tape were barred by *res judicata* because Petitioner raised the issues in prior proceedings. (Doc. 30-3, p. 5-6). The appellate court also held that Petitioner's claim concerning Emanuel Garrett's alibi testimony was forfeited because there was no reason that Petitioner could not have presented the testimony at earlier proceedings. (Doc. 30-3, p. 6). Moreover, Garrett's affidavit contradicted Petitioner's testimony at trial. *Id.*

On February 22, 2013 Petitioner filed a petition for leave to appeal with the Illinois Supreme Court. (Doc. 49-6, p. 4). Petitioner argued that the appellate court erred by granting appointed counsel's *Finley* motion despite "meritable issues for appeal" and that the trial court erred by denying his motion for leave to file a successive post-conviction petition. (Doc. 49-6, p. 7). The Illinois Supreme Court denied the petition for leave to appeal on July 3, 2013. (Doc. 49-7, p. 1).

13

Petitioner filed the present habeas corpus petition in this Court on August 18, 2011. (Doc. 1). In the petition Petitioner essentially argued two grounds for relief:

> I.   Petitioner's due process rights were violated because the prosecution "continued to vouch for the credibility of the witness in open court." (Doc. 1, p. 6).

> II.  Trial counsel was ineffective for failing to "present all mitigating evidence," "bring forth alibi witnesses," "prepare, interview or investigate petitioner's case," and for "fail[ing] to challenge the charging indictment." (Doc. 1, p. 8-11).

On October 15, 2012 Petitioner filed a motion to supplement his petition. (Doc. 21). The motion was granted on October 17, 2012 (Doc. 23) and Petitioner filed a supplemental petition on October 17, 2012.  The supplement stated that trial counsel "failed to investigate and interview" witnesses Tamara Lewis, Kyle Turner, Artimus Collins, Lakika James and Detective G. W. Owens. (Doc. 23, p. 3). Furthermore, Petitioner raised two new claims in the supplement:

> III. Appellate counsel was ineffective for failing to argue that trial counsel should have discovered and introduced the Grandpa's store surveillance footage.

> IV. Post-conviction counsel was ineffective for failing to "present proof of [petitioner's] claims," and conduct a full investigation including interviews of exculpatory witnesses.

14

(Doc. 23, p. 2-3). On December 4, 2012 Respondent filed a motion to stay the habeas corpus petition pending Petitioner's exhaustion of state court remedies. (Doc. 29). The Court granted the motion on December 26, 2012. (Doc. 31).

The stay was lifted on June 14, 2013 (Doc. 44). On September 13, 2013 Respondent filed its answer to Petitioner's original and supplement petition. (Doc. 49). On January 10, 2014 Petitioner sought leave to file an amended petition (Doc. 57) and he was granted leave to do so on January 30, 2014. (Doc. 58). Petitioner's amended petition includes the following claims:

I. "Petitioner's due process rights were violated when the prosecutor improperly vouched for the credibility of several witnesses during closing argument."

II. "Petitioner's Sixth Amendment right was violated on trial counsel's ineffective assistance." Trial counsel failed to:[3]

a. present mitigating evidence (Petitioner only mentions the Grandpa's surveillance tape);

b. present alibi witnesses (Petitioner only mentions Alan Avant);

c. prepare a defense by adequately familiarizing herself with the facts of the case, consulting Petitioner and reviewing discovery;

d. interview Avant, James, Hill, Springer and Daniel Cuneo;

e. "investigate the scene, the security tape, or the circumstances of [Petitioner's] statement";

---

[3] Petitioner's amended petition only includes subsections (a) through (e). However, for the sake of clarity and thoroughness, the subsections (d) and (e) have been separated to (d), (e), (f), and (g), respectively.

      f.  challenge the arrest on the grounds that it was warrantless, lacking in probable cause and because Petitioner was not promptly taken before a judge;

      g.  challenge the amended indictment because it was "made without notice and never returned by the grand jury."

III. The "cumulative prejudice" of trial counsel's aforementioned failures amounted to ineffective assistance of counsel.

Respondent filed its answer to Petitioner's amended petition on March 3, 2014. (Doc. 60). Respondent argues in its answer that all of Petitioner's claims are either procedurally defaulted or meritless. *Id.* Petitioner filed a reply to Respondent's answer on May 2, 2014. (Doc. 63).

## ANALYSIS

A prisoner in state custody may seek habeas relief in federal courts "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "a federal court may grant habeas relief only if the state court's adjudication of the petitioner's constitutional claims was based on unreasonable fact-finding or was contrary to, or involved an unreasonable application of, clearly established federal law." *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009); 28 U.S.C. § 2254(d). Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the

federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The independent state court ground may be either substantive or procedural. *Id.*

Before a state prisoner may seek federal habeas relief the prisoner must first properly present their claims in state court. 28 U.S.C. § 2254(c). Proper exhaustion in Illinois courts requires two tiers of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). An Illinois prisoner seeking habeas relief must present their claims to the Illinois Appellate Court and petition the Illinois Supreme Court for discretionary review. *Id.* "As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits." *Id.* However, a petitioner's procedural default may be excused if the "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (1991).

Turning to Petitioner's claims in the present case, Petitioner first asserts that his due process rights under the Fourteenth Amendment were violated when the prosecutor improperly vouched for the credibility of witnesses James, Hill and Springer during his closing argument. Respondent argues that this claim is

procedurally defaulted because Petitioner "did not fairly present this federal constitutional basis when he presented the claim in state court on direct appeal."

A petitioner must "fairly present" his claims to the state courts prior to seeking federal habeas relief. *O'Sullivan*, 526 U.S. at 848. A claim is procedurally defaulted unless this requirement is satisfied. *Id.* Generally, a prisoner fails to fairly present a claim to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, which does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Seventh Circuit applies a four factor test to determine whether a claim is fairly presented:

> this Court looks to whether the petitioner: (1) relied on relevant federal cases applying constitutional analysis; (2) relied on state cases applying federal constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged a pattern of facts that is well within the mainstream of federal constitutional litigation.

*White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009).

In the present case, on direct appeal neither Petitioner's appellate brief nor his petition for leave to appeal to the Illinois Supreme Court cite any federal cases. Moreover, Petitioner cites to only one case, *People v. Blue*, 189 Ill. 2d 99, 724 N.E.2d 920 (2000), that includes a reference to any federal case law.[4] *People*

---

[4] Petitioner's petition for leave to appeal is a verbatim copy of his appellate brief. The cited cases for both are: *People v. Blue*, 189 Ill. 2d 99, 724 N.E.2d 920 (2000); *People v. Smith*, 141 Ill. 2d

*v. Blue* mentions the Fourteenth Amendment due process clause in passing and includes a citation to only one federal case. *Id.* at 138, 724 N.E.2d at 940. However the federal case, *United States v. Johnson*, 690 F.2d 638 (7th Cir. 1982) primarily focuses on the "advocate witness rule" and does not discuss any federal constitutional principles. Thus, the first two factors of the "fairly presented claim" test weigh against the Petitioner.

The third question is whether Petitioner "asserted the claim in terms so particular as to call to mind a specific constitutional right." Here, Petitioner does not use the term "due process" at all in his direct appeal appellate brief or petition for leave to appeal. Petitioner instead refers to his right to a "fair trial." However, Petitioner's general references to a defendant's right to a "fair trial" are insufficient to fairly present a federal due process claim. *Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992) ("with respect to due process claims, the contours of the possible constitutional claims are, of course, particularly indistinct and the overlap of state and federal jurisprudence particularly striking"); *Moleterno v. Nelson*, 114 F.3d 629 (7th Cir. 1997). The fourth and last question is whether Petitioner "alleged a pattern of facts that is well within the mainstream of federal constitutional litigation." As previously noted, due process claims may involve

---

40, 565 N.E.2d 900 (1990); *People v. Emerson*, 97 Ill. 2d 487, 455 N.E.2d 41 (1983); *People v. Weinstein*, 35 Ill. 2d 467, 220 N.E.2d 432 (1966); *People v. Moore*, 9 Ill. 2d 224, 137 N.E.2d 246 (1956); *People v. Fluker*, 318 Ill. App. 3d 193, 742 N.E.2d 799 (2000); *People v. McCollum*, 239 Ill. App. 3d 593, 607 N.E.2d 240 (1992); *People v. Hood*, 229 Ill. App. 3d 202, 593 N.E.2d 805 (1992); *People v. Wilson*, 199 Ill. App. 3d 792, 557 N.E.2d 571 (1990); *People v. Ridley*, 199 Ill. App. 3d 487, 557 N.E.2d 378 (1990); *People v. Rogers*, 172 Ill. App. 3d 471, 526 N.E.2d 655 (1988); *People v. Ferguson*, 172 Ill. App. 3d 1, 526 N.E.2d 525 (1988); *People v. Sexton*, 162 Ill. App. 3d 607, 515 N.E.2d 1359 (1987) and *People v. Smith*, 158 Ill. App. 3d 595, 511 N.E.2d 770 (1987).

19

overlapping state and federal protections. It is therefore unclear whether Petitioner's claims fall "within the mainstream of federal constitutional litigation."

In sum, the four factors of the "fairly presented" test weigh against the Petitioner. Thus, Petitioner failed to fairly present a federal due process claim in state court and the claim is procedurally defaulted. Petitioner does raise the due process claim in his successive post-conviction petition, (Doc. 30-2, p. 50), however Petitioner failed to present this issue in his petition for leave to appeal to the Illinois Supreme Court. (Doc. 49-6, p. 4). Moreover, Petitioner's petition to file the successive post-conviction petition was denied on an independent and adequate state law ground. (Doc. 30-3, p. 1).

The next issue is whether Petitioner is entitled to habeas relief on his ineffective assistance of counsel claim. Petitioner argues seven separate failures each amounted to ineffective assistance of counsel. Six of the seven claims are procedurally defaulted. Only claim (b) (Petitioner's claim that counsel should have called Alan Avant) is not procedurally defaulted. However, the claim is meritless. Each of the seven claims will be addressed in turn.

Petitioner argues in claim (a) that trial counsel was ineffective because counsel failed to present mitigating evidence; specifically the Grandpa's store surveillance footage. The Grandpa's store surveillance issue was initially raised in Petitioner's amended post-conviction petition, but Petitioner did not raise the issue in the amended post-conviction petition appeal. (Doc. 30-1, p. 60). Petitioner raised the issue again in his petition to file a successive post-conviction

petition. However, the state court denied leave to file the successive post-conviction petition on an independent and adequate state law ground. *See* 725 ILCS 5/122-1(f) ("Leave [to file a successive post-conviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure"). Claim (a) is therefore procedurally defaulted.

Petitioner argues in claim (b) that trial counsel was ineffective for failing to present Alan Avant as an alibi witness. Petitioner properly presented this claim in one complete round of appellate review in his amended post-conviction petition. It is therefore not procedurally defaulted and ripe for review.

On June 25, 2003 Alan Avant signed an affidavit[5] stating that he was at the home of Rueben Springer at approximately 6:30 P.M. on the night of the murders (Doc. 49-3, p. 19). Avant stated in the affidavit that Gary James's car was parked outside the home. Avant approached and noticed three individuals in the vehicle; Gary James, Willie Springer and Brian Hill. Avant briefly spoke to the three men in the car and he asked for a ride to the local MetroLink station. James told Avant

---

[5] Avant's affidavit states:

> On the sixth of November, 1997 I went over to Rueben Springer's house around 6 or 6:30 and I noticed a maroon Chevy SS Impala in the front of the house and as I was walking up to the house I saw Willie Springer Rueben's brother in the passenger's side of the car. He ask me what did I want and I asked him was his brother "Sweet Pee" aka Rueben home. He stated to me that he was not. I ask him for a light that is when the back passenger window came down. Then I noticed Brian Hill in the back of the car. It was three people in the car, Gary James, Brian Hill and Willie Springer. Once I got a light I asked for a ride to the Metro Link so I could catch the bus home. Gary said no because he was on something. Then the three pulled off going down Exchange Ave. I did not see James Bean in the car or none that day. I was not contacted by Police or States Attorney as a witness because I never came forward with information until I heard it was said that James Bean was in the car. I told Bean's lawyer this, a Ms. Billingsley, and I told a State's Attorney named Judy Dalan, both told me I was not needed, since they knew Bean was not in the car.

"no" and drove off down Exchange Avenue. Avant stated in the affidavit that he did not observe Petitioner in the vehicle nor did he see Petitioner at any time on November 6, 1997. Petitioner asserts in his amended petition for habeas corpus that trial counsel was ineffective for failing "to call Alan Avant who would have testified that petitioner was not present in the car involved in the crimes. The failure of counsel to present available witnesses has been found to be ineffective. *Wright v. Gramley*, 125 F.3d 1038, 1043 (7th Cir. 1997)."

Petitioner raised his ineffective assistance of counsel claim regarding Avant's testimony in his amended post-conviction petition. (Doc. 49-4, p. 1). The amended post-conviction petition was dismissed and the state appellate court affirmed the dismissal. (Doc. 30-2, p. 1). On appeal, the state appellate court analyzed his ineffective assistance of counsel claim using the two pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel under *Strickland* a defendant must show that "counsel's representation fell below an objective standard of reasonableness" and that the "deficient performance prejudiced the defense." *Id.* at 688.

The appellate court held Petitioner's ineffective assistance of counsel claim fails because Avant's testimony would have been of little value. Petitioner testified at trial that he was in James's car at around 2:00 P.M. or 2:30 P.M. on the day of the murders. Hill, Springer and James each testified at trial but none of them testified that Petitioner was in James's car around 6:00 P.M. or 6:30 P.M. As such, the court noted that Avant's affidavit neither corroborated Petitioner's

testimony at trial nor contradicted any of the prosecution's witnesses. The appellate court therefore held that the failure to call Avant as a witness was not ineffective assistance of counsel. "As a general matter, alibi witnesses should be investigated and called, if available." *Woods v. Schwartz*, 589 F.3d 368, 378 (7th Cir. 2009). However, the decision not to call an alibi witness will not be deemed to be ineffective assistance of counsel if "the alibi testimony did not create a reasonable probability of a different outcome." *Id.* Under these circumstances, Avant's testimony would have had little probative value and the appellate court reasonably applied the Strickland standard.

Petitioner argues in claim (c) that trial counsel was ineffective because counsel failed to prepare a defense by adequately familiarizing herself with the facts of the case, consulting Petitioner and reviewing discovery. This is a new claim. Petitioner did not raise this claim in any of the state court proceedings. It is therefore procedurally defaulted.

Petitioner argues in claim (d) that trial counsel was ineffective because counsel failed to interview Avant, James, Hill, Springer and Daniel Cuneo. This is also a new claim that was not raised in any of the state court proceedings. It is procedurally defaulted.

Petitioner argues in claim (e) that trial counsel was ineffective because counsel failed to "investigate the scene, the security tape, or the circumstances of [Petitioner's] statement." The security tape issue is procedurally defaulted for the same reasons as claim (a). The "scene" and "circumstances" issues were not

raised in any of the state court proceedings and are therefore procedurally defaulted.

Petitioner argues in claim (f) that trial counsel was ineffective because counsel failed to challenge the arrest on the grounds that it was warrantless, lacking in probable cause and because Petitioner was not promptly taken before a judge. Claim (f) was presented in Petitioner's amended post-conviction petition but the issue was dropped on appeal. Claim (f) is thus procedurally defaulted.

Petitioner argues in claim (g) that trial counsel was ineffective because counsel failed to challenge the amended indictment because it was "made without notice and never returned by the grand jury." The general issue was raised in his successive post-conviction petition but it was dropped on appeal. It is thus procedurally defaulted.

Petitioner's third claim is that the "cumulative prejudice" of trial counsel's aforementioned failures amounts to ineffective assistance of counsel. However, all of his separate grounds of ineffective assistance of counsel are either procedurally defaulted or meritless. Thus his cumulative prejudice claim also fails.

Petitioner also argues that even if some of his claims are procedurally defaulted, the defaults occurred because of post-conviction counsel and because Petitioner has a low I.Q. "and below average psychological ability." (Doc. 63, p. 17). A petitioner may escape the consequences of the default by showing either cause and actual prejudice, or a miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). The Supreme Court has "not identified with precision exactly

what constitutes 'cause' to excuse a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Nevertheless, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The *Murray* court identified the following as objective impediments to compliance with a procedural rule: (1) interference by officials that makes compliance with the state's procedural rule impractical; (2) a showing that the factual or legal basis for the claim was not reasonably available; and (3) the procedural default was the result of ineffective assistance of counsel, viz., failing to properly preserve a federal constitutional claim for review in state court. *Id.* at 488–89.

Ineffective assistance of counsel can constitute "cause" to excuse a procedural default if the petitioner had a constitutional right to counsel in the proceeding in which the default occurred. *Coleman v. Thompson*, 501 U.S. 722, 752-753.   Criminal defendants have a constitutional right to the effective assistance of counsel at trial and for all direct appeals the state grants as of right. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Where the "cause" is ineffectiveness of counsel, the underlying ineffectiveness claim must have been exhausted in state court. *Murray*, 477 U.S. at 489.   But if the claim of ineffectiveness is itself defaulted, it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to that ineffectiveness claim too. *Edwards*, 529 U.S. at 452–54.

In addition to establishing cause for the default, the petitioner must show there was actual prejudice from the inability to raise the issue. *Murray*, 477 U.S. at 494. The Supreme Court has not attempted to establish conclusively the contours of the prejudice standard. *Amadeo v. Zant*, 486 U.S. 214, 221 (1988). But it has made clear that the petitioner must demonstrate "not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

The second procedural default exception – a "fundamental miscarriage of justice" – is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Such claims of actual innocence are "extremely rare." *Id.* at 321. A petitioner who asserts actual innocence to excuse a default must establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence. *Id.* at 327.

In the present case, Petitioner has failed to demonstrate "cause and actual prejudice" or a miscarriage of justice. Even if the procedural defaults were the result of ineffective assistance of counsel, Petitioner has not demonstrated that he suffered actual prejudice so that "the errors at his trial … worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Nor has Petitioner demonstrated that a

miscarriage of justice occurred. As the state appellate court noted on direct appeal, "[t]he case against the defendant was exceptionally strong." (Doc. 30-1, p. 5).

The last issue is whether a certificate of appealability ("COA") should be issued. Upon entering an order denying habeas relief, the Court must issue or deny a COA. *Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.* Where a district court denies a habeas petition on procedural grounds, in order to obtain a COA, the Petitioner must show that jurists of reason would find it debatable whether petitioner has alleged at least one meritorious claim, and that these same jurists would find the procedural ruling debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the present case, reasonable jurists would not find it debatable that Petitioner's claim of ineffective assistance of counsel regarding Avant's testimony is meritless, and that Petitioner's other claims are procedurally defaulted. Therefore, Petitioner's claims shall not be certified for appeal.

## **CONCLUSION**

Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d).

Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 58) is therefore

**DENIED** and the Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED.**

**Signed this 29th day of September, 2015.**

Digitally signed by
David R. Herndon
Date: 2015.09.29
14:14:47 -05'00'

**United States District Judge**

28